UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLENE M JACKSON,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>GENERAL MILLS, INC.,<br><br>　　　　　　　　　Defendant. | Case No.: 18cv2634-LAB (BGS)<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS AND STRIKE**<br><br>**[Docket number 21.]** |

This putative consumer class action was originally filed in San Diego Superior Court, and removed on the basis of diversity jurisdiction. Plaintiff Charlene Jackson alleges she bought a box of Annie's Frosted Oat Flakes cereal in Bakersfield in December of 2016. She alleges that she was surprised when she opened the box and discovered that the box was between 30% and 50% empty, *i.e.*, that it consisted of 30% to 50% "slack-fill." Slack-filled containers may violate Cal. Bus. & Prof. Code §§ 12606.2(b) (the California Fair Packaging and Labeling Act, or CFPLA), though certain exceptions apply. Jackson seeks to represent both a nationwide class and a California class consisting of consumers who bought any of Annie's HOMEGROWN brand cereal products.

Following removal, Defendant General Mills moved to dismiss. Instead of opposing the motion, Jackson filed an amended complaint (the "FAC"), which is

now the operative pleading. It includes claims based on several California statutes.

Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b), and to strike certain class allegations under Fed. R. Civ. P. 12(f).

**Legal Standards**

A motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted to proceed. *Id.* at 558 (citation omitted). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of misconduct"; they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). The Court does not weigh evidence or make credibility determinations. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013). At the same time, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted).

To meet the ordinary pleading standard and avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. But claims that sound in fraud, including those arising under state law, must be pled with particularity. Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003). This includes alleging who

made various misrepresentations, how the misrepresentations were conveyed to the plaintiff, and under what circumstances. *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1998).

New or expanded allegations in opposition to a motion to dismiss are considered when deciding whether to grant leave to amend, but are not considered when ruling on a 12(b)(6) motion. *See Schneider v. Cal. Dep't of Corr. & Rehab.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). *See also Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

Under Fed. R. Civ. P. 12(f), the Court has discretion either *sua sponte* or on the motion of a party, to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a motion to strike is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

Normally class allegations are tested on a motion for class certification, although "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982). Some courts have struck class allegations where it is clear from the pleadings that class claims cannot be maintained. *See, e.g., Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 990 (N.D.Cal.2009).

The Court is also obligated to examine its own jurisdiction, including jurisdictional issues such as standing; it must do this sua sponte if necessary. *See Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 954 (9th Cir. 2011) (en banc).

**Judicial Notice**

General Mills asks the Court to take judicial notice of two articles quoted in the FAC, and of certain photographs of its products. This request is **GRANTED IN PART**. While product packaging is generally noticeable in product-labeling

claims cases, *see Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1098–99 (S.D.Cal., 2015), the photographs depict Defendant's own demonstration of how cereal fits into its containers. The photographs themselves are therefore inappropriate for judicial notice. Some of the underlying facts demonstrated in the photographs, however, are appropriately noticed. Most significantly, the ordinary properties of cereal boxes, flexible plastic bags, and cereal are generally known, particularly among consumers who buy cereal. If it were otherwise, consumers could not have reasonable expectations about the cereal they were buying.

Plastic liner bags in cereal boxes conform to the shape of the boxes. When their shape is changed in some way, the cereal moves around and the level of cereal in the bag changes too. For example, if cereal boxes and bags are squeezed or manipulated as in the photographs in the FAC, the level of cereal will be lower than it would be in an average box on a supermarket shelf. It is also common knowledge that cereal tends to settle more if it is shaken or handled.[1]

Because the FAC relies on language from the two articles (Exs. A and B) to show it is plausible that a reasonable consumer would be deceived by the slack-fill, the full articles can be considered as part of the FAC even without judicial notice. *See Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (holding that district court properly considered full text of documents quoted in part in the complaint, without converting motion to dismiss into motion for summary judgment).

**Defendant's Arguments**

General Mills asks the Court to strike all reference to a nationwide class, arguing that she lacks standing to represent them. They also argue that the FAC

---

[1] These observations are consistent with the contents of the Federal Register discussed below, which is also subject to judicial notice. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1087 (N.D. Cal., 2017).

4

18cv2634-LAB (BGS)

is inadequately pled, for several reasons, including:

1. It fails to allege why the slack-fill was non-functional under the federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301, *et seq.*, which means the state claims are preempted.
2. Her deception claims are implausible in light of what reasonable consumers know and expect of cereal and also in light of disclosures on the packaging.
3. Her fraud claims are not pled with adequate particularity.
4. Her claims under the "unlawful" prong of California's Unfair Competition Law fails because she did not plead any statutory violation.
5. She lacks standing to pursue injunctive relief because she does not allege plans to purchase the products in future, and because now that she knows about the alleged slack-fill, she cannot again be injured by it.
6. She lacks standing to assert claims based on other cereal products she did not purchase, particularly because she does not allege how the product she bought is similar to all others.
7. She may not represent out-of-state class members whose claims have no affiliation with the forum state.

**Discussion**

**Nationwide Class Claims**

It is undisputed that General Mills is a Delaware corporation with its principal place of business in Minneapolis, Minnesota. Citing *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773 (2017), General Mills argues that the Court lacks either general or specific personal jurisdiction over it. While it is questionable whether *Bristol-Myers* applies in the federal class action context, *see In re Morning Song Bird Food Litigation*, 2018 WL 1382746, at *5 (S.D. Cal., Mar. 19, 2018), the issue of personal jurisdiction is fairly raised.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W.*

*States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). The only gesture Jackson made towards establishing personal jurisdiction was to assert that the Court has specific personal jurisdiction over the nationwide class's claims, and to cite authority showing that *Bristol-Myers* probably does not apply to class actions. It may be that the Court can exercise personal jurisdiction over these claims, but it is Jackson's burden to establish that, and she has not done so.

General Mills also correctly points out that other courts have stricken nationwide claims based on California's consumer protection laws. Applying California's consumer protection laws to transactions having no relationship at all with California is problematic. In *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), the Ninth Circuit considered class claims with a much stronger California nexus. A nationwide class sued Honda, which was headquartered in California for violations of California state laws in connection with alleged misrepresentations made in California. Nevertheless, the court held that the members' consumer protection claims should be governed by the consumer protection laws of the jurisdiction where the transactions took place. *Id.* at 594. Here, there is absolutely <u>no</u> connection between California and claims by non-California consumers: the product was manufactured, marketed, and sold elsewhere by a non-California company, and purchased by consumers in other states. None of the alleged misconduct or injuries occurred in California. This is a serious problem, and likely fatal to the nationwide class's claims. *See Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1147–48 (N.D. Cal., 2013). *See also Edgar v. MITE Corp.*, 457 U.S. 624, 644–46 (1982) (holding that applying Illinois law to transactions with inadequate nexus to the state would unduly burden interstate commerce).

The California Supreme Court has made clear the laws of this state do not purport to govern occurrences outside the state, "unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its

purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011) (citation omitted). California's Unfair Competition Law does not have extraterritorial application. *Id.* Nor do California's Consumer Legal Remedies Act, or its False Advertising Law. *Wilson*, 961 F. Supp. 2d at 1147. The same would appear to hold true for the California Fair Packaging and Labeling Act. *See Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1103 (C.D. Cal., 2012) (citing *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980)) (holding that California's interest in applying its law to residents of other states who purchased and used products in those other states was too attenuated).

The Ninth Circuit has directed district courts to determine whether California law can apply to the class claims as a whole before certifying a class. *In re Hyundai and Kia Fuel Economy Litigation*, 881 F.3d 679, 702 (9th Cir. 2018). Normally this is done by carrying out a choice of law analysis to determine whether differences among the laws of California and other states defeat the predominance requirement. *Id.* But here, it is not necessary to do so because the FAC's claims arise solely under California's consumer protection laws, and these laws simply do not apply to transactions outside California involving non-California consumers.

**Types of Cereal Products**

General Mills correctly points out another problem with overbreadth, in that Jackson is attempting to represent the purchasers of all types of Annie's cereals, not just the one type she bought. Jackson has not alleged how other types of cereal are similar to the type she bought, or if they are similar at all. Some courts have held that a named plaintiff has standing to bring claims on with regard to the products she purchased, while others hold that she can represent class members who purchased sufficiently similar products. *See Clancy v. The Bromley Tea Co.*,

///
///
///

308 F.R.D. 564, 569 (N.D. Cal., 2013).[2] But regardless of which approach the Court takes, Jackson lacks standing to sue on behalf of purchasers of different kinds of cereal. One key issue in this case is the degree to which slack-fill results from unavoidable settling of the cereal, *see* Cal. Bus. & Prof. Code § 12606.2(c)(3), which obviously will vary depending on the type, shape, and texture of the cereal, and possibly other factors as well.[3] Furthermore, the expectation of consumers who bought different kinds of cereal is likely to be different.[4] Jackson does not have standing to sue on behalf of consumers who bought different kinds of cereal.

**Standing to Seek Injunctive Relief**

General Mills points out that Jackson presently has no intention to buy Annie's cereal in the future, and also that even if she was deceived once, she is unlikely to be deceived in the future. Therefore, it argues, she has no standing to seek injunctive relief. Jackson bears the burden of establishing standing. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 and n.3 (2006).

Jackson alleges that both she and the class members "will not purchase the Products in the future, although they would like to do so, unless and until Defendant

---

[2] A third approach is to defer the issue until the class certification stage, and analyze it under Fed. R. Civ. P. 23. *Id.* But the Court believes this issue is clear enough that it ought to be addressed at the pleading stage, which it has discretion to do. *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal., 2010) (holding that, under Rule 23(c)(1)(A) and 23(d)(1)(D), courts have authority to strike class allegations before discovery).

[3] The FAC alleges that while the cereal she bought settled to 50% slack-fill, two other varieties of Annie's HOMEGROWN cereals settle to 30% slack-fill. (FAC, § 11.) It does not mention the slack-fill percentage of any other type of cereal.

[4] The FAC includes photographs of the three types of cereal, in bags. (FAC, § 22–23.) The appearance is dramatically different. While the oat flakes cereal appears to fill roughly 50% of the liner bag, the other two cereals appear rather full. *See Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *5 (C.D. Cal., Oct. 17, 2018) (products were not sufficiently similar, where plaintiff failed to show that other varieties of pretzels had similar slack-fill in their packaging).

takes corrective action." (FAC, ¶ 31.) In other words, she is not buying Annie's cereal and has no immediate plans to buy it. Allegations that the entire class is refraining from buying Annie's cereal is obviously implausible, because that would mean no one in the country was buying it. Such an allegation should not have been included.

Jackson cites the now-superseded decision in *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th Cir. 2017), *amended and superseded on denial of reh'g en banc*, 889 F.3d 956 (9th Cir. 2018) for the principle that consumers deceived by false advertising have standing to seek injunctive relief. In fact, that decision is not nearly as broad as Jackson believes. Rather, it merely holds that injunctive relief *may* be available; the consumer must still establish the threat of actual and imminent injury. *See id.* at 967. A plaintiff who is deceived by false advertising may be injured by her inability to rely on advertising in the future. *See id.* at 969–70. The panel did not, however, hold that consumers deceived by false advertising automatically have standing to seek injunctive relief. The decision also acknowledged that the question was a close one, *id.* at 971, implying that standing was unlikely in cases where the threat of future harm was weaker.

Here, Plaintiff is aware that the cereal in question is sold by weight, and that the package identifies the number of servings. She has not alleged that either of these are false or misleading. Rather, she alleges that consumers do not bother to look at either of these, and base their evaluation of the amount of cereal on the box dimensions. (FAC, ¶ 1; Opp'n to Mot. to Dismiss, at 2:1–4.) That may be true of other consumers, but she has not shown why it is true for her and, more importantly, why it will still be true for her in the future. She also suggests that the amount of cereal is properly determined by the number of flakes in the box. (*Id.*, 11:11–13.) The Court rejects this. Reasonable consumers do not judge the amount of cereal by the number of flakes, or expect a particular flake count in each serving.

9

18cv2634-LAB (BGS)

Given that she now knows she can ascertain the amount of cereal she is buying by looking at the label, she has not shown any likelihood she will be deceived in the future. *See Davidson*, 889 F.3d at 972 (noting that the plaintiff alleged she had no way of determining whether future representations would be true); *Cordes*, 2018 WL 6714323 at *4 (customer was unlikely to be deceived in future by slack-fill in pretzel bag, where he could "easily determine" the amount of product in the package by reading the back panel).

Jackson's allegation that she would like to buy the cereal again, if the problems she points to are remedied, is also implausible. If she is dissatisfied enough with the cereal that she has stopped buying it, there is no reason to suppose that changed product labeling to tell her what she already knows about the amount of cereal in the box would change that. *See Lanovaz v. Twinings N. Am., Inc.*, 726 Fed. Appx. 590, 591 (9th Cir. 2018) (plaintiff's statement that she would "consider buying" products in the future if misleading labels were removed does not satisfy standing requirements).

Jackson has not met her burden of establishing standing to seek injunctive relief.

**Non-Functionality of Slack-Fill**

General Mills argues that Jackson must properly allege that the slack-fill is non-functional under both the CFPLA and the FDCA: the former, to show she has a claim under that statute, and the latter, to show her claim is not preempted by federal law. Jackson is not suing under the FDCA, which affords no private right of action. *See Ivie v. Kraft Foods Global, Inc.*, 2013 WL 685372, at *1 (N.D. Cal., Feb. 25, 2013). Under the FDCA, however, no state may establish a requirement for food that is not identical to the FDA standard. *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 926 (N.D. Cal., 2014) (citing 21 U.S.C. § 343-1(a)(1)). Therefore, any state law seeking to establish different standards is preempted. *Id.* The CFPLA itself provides that it is to be interpreted consistently with federal law, *see*

Cal. Bus. & Prof. Code § 12606.2(e), so in any event Jackson's claim must be consistent with the FDCA. Because the CFPLA and the FDCA's requirements in pertinent part are identical here, *see* 21 C.F.R. § 100.100, compliance with the FDCA amounts to compliance with the CFPLA.

Jackson argues that the inapplicability of "safe harbor" provisions is an affirmative defense, and she need not plead facts showing it does not apply. She argues, however, that she has adequately pled facts showing that the slack-fill is non-functional.

Federal courts in California are divided about whether the "safe harbor" provisions are affirmative defenses, or whether their inapplicability is an element that must be pled. *See Matic v. U.S. Nutrition, Inc.*, 2019 WL 3084335, slip op. at *6 (C.D. Cal., Mar. 27, 2019) (surveying cases). In the Court's view, the language of the statute suggests that inapplicability of any of the six "safe harbor" provisions is an element of the claim, because that is what renders ordinary slack-fill nonfunctional, and therefore both deceptive and actionable. Specifically:

> A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill. Slack fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following [safe harbor provisions] . . . .

§ 12606.2(c).

The FAC's allegations concerning the reason for slack-fill in part misunderstand the nature of food settling. The settling of contents refers to contents getting smaller. It is a "normal unavoidable process for many types of food (e.g., cereal and potato chips) . . . [and is] a function of the physical properties of the product . . . ." 58 Fed. Reg. 2957-01, 2961, 1993 WL 1564 (Jan. 6, 1993). Settling occurs after manufacture, during shipping and handling. *Id.*

///

11
18cv2634-LAB (BGS)

The FAC has hardly anything to say about settling. It alleges that "[w]hile some settling may occur in products, it is unrealistic and unbelievable" that cereal would settle to the degree that a package was 30% to 50% empty. (FAC, ¶ 12.) It also, confusingly, suggests that slack-fill is included at manufacture to account for later product settling. (*Id.*, ¶ 15.) Without more supporting detail, the FAC's allegation that cereal cannot settle by 30% to 50% is implausible. *See* 58 Fed. Reg. 2957-01, 2959 ("Functional slack-fill levels for cereal products after shipping [ranged] from 8.6 to 43.1 percent of the container volume.")

Other courts have held similarly perfunctory allegations about product settling to be conclusory and implausible. *See Bush v. Mondelez Int'l, Inc.*, 2016 WL 7324990, at *4 (N.D. Cal., Dec. 16, 2016). Jackson also fails to allege facts showing that consumers expect cereal liner bags to be fuller than Annie's are. Anyone who has bought a box of cold cereal will know the liner bag is likely to be much less than 100% full. Photographs included in the FAC do not lend much support, because the cereal bags and boxes shown there do not show how full the boxes would have been when purchased. Jackson has pled no facts to suggest that reasonable consumers would expect a cereal liner bag such as the one she bought and the ones shown in the photographs to be more than 50% to 70% full.

**Other Issues**

Because Jackson's claims sound in fraud, she is obligated to plead supporting facts with greater particularity. As pled, they do not even satisfy the ordinary Rule 8 standard, however, much less the Rule 9(b) standard.

Because Jackson has not adequately pled any violation of a statute her claim under the "unlawful" prong of the UCL is inadequately pled.

**Conclusion and Order**

General Mills' motion is **GRANTED IN PART**. Because it is clear Jackson cannot represent a nationwide class and cannot successfully amend her complaint to correct that defect, the request to strike the nationwide class claims is

1  **GRANTED**.  Because it is not absolutely certain Jackson cannot salvage her complaint by amendment, her other claims are **DISMISSED WITHOUT PREJUDICE**. But she has already amended once in response to a motion to dismiss, and it appears unlikely she can successfully amend again. If she wishes to amend, and believes she can successfully do so, she must seek leave to do so, by filing an *ex parte* motion by **October 11, 2019**. This motion must comply with Civil Local Rule 15.1(b), which means it must attach a copy of her proposed second amended complaint and a redline version showing what changes she made.  The motion itself must explain how she has corrected the defects this order identified. If she fails to seek leave to amend as ordered within the time permitted, this action will be dismissed.  If she files an *ex parte* motion, General Mills may file an opposition by **October 25, 2019**.  No reply is to be filed without leave. The Court may, if appropriate, set a hearing, but otherwise this matter will be deemed submitted on the papers.

If Jackson does not believe she can successfully amend, or does not wish to amend, she should file a notice so stating and this action will be dismissed.

**IT IS SO ORDERED**.

Dated:  September 20, 2019

*Larry A. Burns*
Hon. Larry Alan Burns
Chief United States District Judge