UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLENE M. JACKSON,<br><br>            Plaintiff,<br><br>v.<br><br>GENERAL MILLS, INC.,<br><br>            Defendant. | Case No.: 18cv2634-LAB (BGS)<br><br>**ORDER DENYING MOTION FOR LEAVE TO AMEND; AND**<br><br>**ORDER OF DISMISSAL**<br><br>**[Docket number 27.]** |

      Plaintiff Charlene Jackson originally filed this putative consumer class action in San Diego Superior Court, and Defendant General Mills, Inc. removed on the basis of diversity jurisdiction. Jackson alleges she bought a box of Annie's Frosted Oat Flakes cereal in Bakersfield in December of 2016. She earlier alleged that she was surprised when she opened the box and discovered that the box was between 30% and 50% empty, *i.e.*, that it consisted of 30% to 50% "slack-fill." Slack-filled containers may violate Cal. Bus. & Prof. Code §§ 12606.2 (the California Fair Packaging and Labeling Act, or CFPLA), though certain exceptions apply. Jackson seeks to represent a class of California consumers who bought this cereal.

      Two motions to dismiss have already been filed in this case. The Court granted the second motion in part, denying only the request to dismiss the entire

complaint with prejudice. The Court struck nationwide class allegations and dismissed certain claims without leave to amend. As to certain claims, however, the Court directed Jackson, if she thought she could successfully amend, to file a motion for leave to amend, attaching her proposed second amended complaint ("SAC") as an exhibit. She has done so, and General Mills filed an opposition.

**Legal Standards**

Leave to amend may be denied if amendment would be futile, or where the proposed amended complaint would be subject to dismissal. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018); *see also Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.")

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). The Court does not weigh evidence or make credibility determinations. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013). At the same time, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted). Nor is the Court required to accept unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Mere "labels and conclusions" do not amount to factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly,* 550 U.S. at 555. "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted to proceed. *Id.* at 558 (citation omitted). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of misconduct"; they must show that the pleader is entitled to relief. *Iqbal,* 556 U.S. at 679. Allegations that are merely consistent with liability are insufficient. *Id.* at 678.

To meet the ordinary pleading standard and avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. But claims that sound in fraud, including those arising under state law, must be pled with particularity. Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003). This includes alleging who made various misrepresentations, how the misrepresentations were conveyed to the plaintiff, and under what circumstances. *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1998).

Under Fed. R. Civ. P. 12(f), the Court has discretion either *sua sponte* or on the motion of a party, to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a motion to strike is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

The Court is also obligated to examine its own jurisdiction, including jurisdictional issues such as standing; it must do this *sua sponte* if necessary. *See Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 954 (9th Cir. 2011) (en banc).

**Previous Judicial Notice**

The Court has previously taken notice of certain facts, at Jackson's request, of the ordinary properties of cereal boxes, the flexible plastic bags that line them, and breakfast cereal. These are generally known, particularly among consumers

who buy cereal. If it were otherwise, the Court held, consumers could not have reasonable expectations about the cereal they were buying.

Among the well-known properties of plastic liner bags in cereal boxes is the fact that they conform to the shape of the boxes. When their shape is changed in some way, the cereal moves around and the level of cereal in the bag changes too. For example, if cereal boxes and bags are squeezed or manipulated, the level of cereal will be lower than it would be in an average box on a supermarket shelf. It is also common knowledge that cereal tends to settle more if it is shaken or handled.

The Court has already taken notice of two articles Jackson offered, and may consider images of cereal boxes Jackson has incorporated into the complaint. *See Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (holding that district court properly considered full text of documents quoted in part in the complaint, without converting motion to dismiss into motion for summary judgment).

In addition, the Court has taken notice of relevant sections of the Federal Register dealing with slack-fill in packaging. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1087 (N.D. Cal., 2017). These are discussed below.

**Discussion**

**Slack-Fill and Plausibility**

At their heart, Jackson's claims depend on the cereal box's slack-fill being non-functional slack-fill as defined in Cal. Bus. & Prof Code § 12606.2. Functional slack-fill (as defined in the same statute) is permissible and non-actionable. *See* § 12606.2(d) ("Slack fill in a package shall not be used as grounds to allege a violation of this section based solely on its presence unless it is nonfunctional slack fill.")

Because a complaint must plead more than mere labels and conclusions, *Iqbal*, 556 U.S. at 678, courts require a plaintiff to plead facts showing that slack-

fill is actionable non-functional slack-fill within the meaning of the relevant statute. *See Bush v. Mondelez Int'l, Inc.*, 2016 WL 7324990, at *4 (N.D. Cal., Dec. 16, 2016) (rejecting as conclusory a plaintiff's assertion that any slack-fill was non-functional). The Court, following this reasoning, has previously held that Jackson must properly allege that the slack-fill is non-functional under both the CFPLA and the FDCA: the former, to show she has a claim under that statute, and the latter, to show her claim is not preempted by federal law. The CFPLA itself provides that it is to be interpreted consistently with federal law, *see* Cal. Bus. & Prof. Code § 12606.2(e), so in any event Jackson's claim must be consistent with the FDCA. Because the CFPLA and the FDCA's requirements in pertinent part are identical here, *see* 21 C.F.R. § 100.100, compliance with the FDCA amounts to compliance with the CFPLA.

The Court also held that inapplicability of any of the six "safe harbor" provisions is an element of the claim, because that is what renders ordinary and permissible slack-fill nonfunctional, and therefore both deceptive and actionable. *See* § 12606.2(d). Specifically:

> A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill. Slack fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following [safe harbor provisions] . . . .

§ 12606.2(c). One safe harbor provision is the requirements of the machines used for enclosing the contents of the package. § 12606.2(c)(2). The SAC concedes that 6.9% of the liner bag may be functional-slack fill under this provision, because the bag cannot be sealed if it is full to the top. (SAC, ¶ 46.) Another — and the more significant provision here — is unavoidable settling of package contents during shipping and handling. § 12606.2(c)(3). The Court held that Jackson must

/ / /

plead facts supporting her conclusion that none of the "safe harbor" provisions applied.

The SAC repeatedly alleges that the box Jackson purchased included "approximately 30%–50% empty space." (SAC, ¶ 1; see also id., ¶ 27 ("roughly 30% — 50%"). ) She also alleges that the interior of the box, including the space outside the plastic liner, contains more than 50% empty space. (Id., ¶¶ 21, 41.) She alleges that boxes of this cereal could contain 30% to 50% or more slack-fill (*id.*, ¶ 44), though she does not allege the box she bought was more than this. After conducting some measurements and performing some mathematical calculations, she determined that her particular box of cereal was 43.1% non-functional slack-fill. (*Id.*, ¶¶ 47, 56, 57, 64, 99, 100, 124 ("Plaintiff paid for 43.1% of cereal product she never received.").)

The settling of contents refers to contents getting smaller. It is a "normal unavoidable process for many types of food (e.g., cereal and potato chips) . . . [and is] a function of the physical properties of the product . . . ." Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 2957-01, 2961, 1993 WL 1564 (Jan. 6, 1993). Settling occurs after manufacture, during shipping and handling. *Id.*

The Court previously held Plaintiff's allegation that cereal cannot settle by 30% to 50% to be implausible. *See* 58 Fed. Reg. 2957-01, 2959 ("Functional slack-fill levels for cereal products after shipping [ranged] from 8.6 to 43.1 percent of the container volume.") Other courts have held similarly perfunctory allegations about product settling to be conclusory and implausible, particularly where they ignore or contradict federal guidance. *See Bush*, 2016 WL 7324990, at *4 (rejecting as implausible an allegation that slack-fill present in a container of cookies was not the result of settling during shipping and handling) (quoting 58 Fed. Reg. 2957-01, 2961).

Jackson now alleges that normal settling for flake cereal is not greater than 30% (SAC, ¶ 52.) She bases this on her claim that, unlike a "powder product,"

1    Annie's whole grain oat and wheat flakes "are more sturdy and are of a greater
2    density such that settling is less likely to occur." (*Id.*, ¶ 53.) The Court rejects this
3    conclusion for several reasons. First, alleging that cereal is more or less dense
4    than some other product whose tendency to settle is unknown provides no
5    meaningful comparison. Second, cereal flakes are less dense, not more dense,
6    than powdered foods such as flour. But most importantly, federal guidance
7    contradicts this allegation. *See Alce v. Wise Foods, Inc.*, 2018 WL 1737750, at *8
8    (S.D. N.Y., Mar. 27, 2018) (citing Misleading Containers; Nonfunctional Slack-Fill,
9    58 Fed. Reg. 64123-01, 64135, 1993 WL 498605 (Dec. 6, 1993) and 58 Fed. Reg.
10   2957-01, 2961 to conclude that the FDA rejected the idea of specific volume
11   thresholds for particular products). Federal guidance also specifically mentions
12   that foods such as cereal and potato chips are prone to settling, because of their
13   physical properties, and mentions that cereal can settle by up to 43.1% after
14   shipping. 58 Fed. Reg. 2957-01, 2959. Any further settling due to handling (*e.g.*,
15   by store employees or customers) is apparently not included in that figure.
16   Jackson's unexplained rejection of federal guidance renders her allegation
17   implausible.

18       Jackson's allegation that the entire 43.1% is non-functional is also
19   implausible, in light of her concession that 6.9% of the slack-fill results from the
20   needs of sealing machinery (SAC, ¶ 46) and the additional inevitable settling that
21   the Federal Register says is normal for products such as cereal. At best, Jackson's
22   allegations are consistent with a claim that a portion of the 43.1% slack-fill was
23   non-functional. That is, the SAC shows it is possible that some of the alleged
24   43.1% slack-fill is non-functional. However, her allegations are also fully consistent
25   with the possibility that the entire 43.1% is functional (and thus non-actionable)
26   slack-fill. The mere possibility that a claim might be present is not enough. *See*
27   *Iqbal*, 556 U.S. at 678–79.
28   / / /

Jackson has attempted to bolster her claim by including images of a different product, Kellogg's Frosted Flakes, and showing images of a bag that includes significantly less slack-fill. There are several problems with this, however. First, the images themselves are not comparable, which renders them less useful.[1]

The two cereals, even if they are similar, are not the same. The packages show that Annie's Frosted Oat Flakes are made of whole grain oat and wheat flakes, while the Kellogg's package identifies Frosted Flakes as being made of corn. Furthermore, while the SAC alleges that the two cereals are of "similar size, shape, and density," (SAC, ¶ 62) mere similarity does not imply that the two cereals settle to the same extent, even assuming they were handled identically before reaching the consumer. Federal guidance recognizes that similar products — and even products within the same product line — vary significantly in the amount of slack-fill. *See* Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64135, 1993 WL 498605 (Dec. 6, 1993).

In any case, the fact that any two or three given boxes of cereal have different amounts of slack-fill does not reasonably suggest a pattern. At most, it is consistent with there being a pattern. The SAC does not allege that the fill levels of the boxes are typical of all boxes of their type, nor would such an allegation be plausible in

---

[1] The box of cereal Jackson bought has been opened and the sides squeezed outwards, allowing more room for cereal to sink to the bottom of the bag. (SAC at 6.) Another photograph of the bag, out of the box, shows it in its expanded state, with a lower fill line. Later photographs show a different Annie's box with an unopened bag, which has a different box design than the one Jackson bought. (*Id.* at 7–8.) The Kellogg's bag has not been opened and the box's sides appear straight, not bowed outwards. (*Id.* at 17.) The Annie's flakes have also settled more than the Kellogg's flakes, though the reason for this is unclear. It may result from different properties of the two cereals, or from the boxes' having been handled differently in transit or in the store.  To be clear, the Court does not rely on its own evaluation of the differences in the boxes, however, and these differences are noted merely by way of explanation.

light of federal guidance on the subject, which makes clear that such estimates would not be reliable. Other courts similarly reject this comparison method of establishing that slack-fill is non-functional. *See Morrison v. Barcel USA, LLC*, 2019 WL 95477, at *3 (S.D. N.Y. Jan. 2, 2019).

Finally, Jackson includes a series of allegations based on serving size, as given on the side pane of an Annie's box. (SAC, ¶¶ 7, 24–25, 57.) The panel says the box includes seven servings, and gives the serving size as "1 cup (42g)". She calculates that this means customers are being "shortchanged roughly 3.2 servings per box." (*Id.*, ¶ 57.) This is true, to an extent; depending on the degree of settling, customers may not get seven cups of cereal, though they will get more than seven 42g servings. But given the fact that settling is well-known to occur in products such as cereal, the SAC does not plead facts sufficient to show that customers expect the volume of cereal to be consistent from one box to the next. By the same token, the SAC does not suggest any reason why customers would believe a particular number of grams of cereal consistently translates into a particular volume. The fact that a per-serving weight is also provided underscores the fact that customers do not rely solely on volume measurements. Furthermore, the SAC alleges that customers generally ignore the Nutrition Facts panel when deciding how much cereal is in the box. (SAC, ¶ 147.)

As before, the proposed SAC again does not plead facts plausibly supporting her conclusion that the slack-fill in the box of cereal she bought was non-functional slack-fill as defined by statute.

**Standing to Seek Injunctive Relief**

The Court previously dismissed Jackson's claim for injunctive relief, based both on the lack of a plausible allegation that a change in labeling would lead her to buy the same cereal again, and also based on the fact that she is now aware of everything she wants the Court to order General Mills to disclose.   Jackson bears
/ / /

the burden of establishing standing. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 and n.3 (2006).

A customer who is deceived by false advertising *may* have standing to seek injunctive relief forbidding the defendant from engaging in the same false advertising again. *See Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th Cir. 2017), *amended and superseded on denial of reh'g en banc*, 889 F.3d 956 (9th Cir. 2018) for the principle that consumers deceived by false advertising have standing to seek injunctive relief. In fact, that decision is not nearly as broad as Jackson believes. Rather, it merely holds that injunctive relief *may* be available; the consumer must still establish the threat of actual and imminent injury. *See id.* at 967. A plaintiff who is deceived by false advertising may be injured by her inability to rely on advertising in the future. *See id.* at 969–70.

Jackson earlier relied on allegations that consumers do not bother to look at the weight marked on cereal boxes but instead base their evaluation of the amount of cereal on the box dimensions. Given that she now knows she can ascertain the amount of cereal she is buying by looking at the label, she has not shown any likelihood she will be deceived in the future. *See Davidson*, 889 F.3d at 972 (noting that the plaintiff alleged she had no way of determining whether future representations would be true).

This case is unlike those cases involving product descriptions that cannot be verified merely by looking at the label. In *Davidson*, the plaintiff could not reasonably rely in future on labeling claims that wipes were "flushable." 889 F.3d at 971–72. By contrast, where a plaintiff learns information during litigation that enables her to evaluate product claims and make appropriate purchasing decisions going forward, an injunction would serve no meaningful purpose as to that plaintiff.

Courts in this Circuit, re-examining their earlier holdings on the basis of *Davidson*, have reached the same conclusion as this Court. For example, in

*Cordes*, a customer was found to lack standing to seek injunctive relief. He was unlikely to be deceived in future by slack-fill in pretzel bag, where he — unlike the plaintiff in *Davidson* — could "easily determine" the amount of product in the package by reading the back panel. 2018 WL 6714323 at *4. In *Rahman v. Motts LLP*, 2018 WL 458024 (N.D. Cal., Sept. 25, 2018), the Northern District distinguished *Davidson* to hold that the plaintiff lacked standing to seek an injunction to prevent him from being deceived by the defendant's use of the phrase "No Sugar Added" on its 100% apple juice. Because he knew that this simply meant no sugar had been added, and not that the juice was healthier than other 100% apple juice, there was no likelihood of future deception. *Id.* at *3. In *Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028 (S.D. Cal., Jan. 3, 2018), the plaintiff claimed she was deceived by the defendant's claim about "net carbs" and sought an injunction to protect her from future deception. However, after she learned how "net carbs" were calculated, she lacked standing because she knew what "net carbs" were and how they were calculated, and she would not be misled in future by the phrase "net carbs" on the defendant's product labels. *Id.* at *15.

In her motion, Jackson now claims she still intends to rely on box size and nothing more. (Docket no. 27 at 4:11–5:2.) Whatever other customers might know or not know, however, Jackson is on notice of facts in her own complaint. If she chooses to ignore them and rely on box size alone, her reliance would not be reasonable.

Importantly, under Cal. Bus. & Prof. Code § 12606.2(c)(7) clear disclosures that allow a customer to know how much product is in the container amount to a safe harbor. For example, a clear and conspicuous disclosure of the product size on the outside of the container, or a line or graphic showing the actual fill line of the package will render slack-fill non-actionable. § 12606.2(c)(7)(B)–(C). These provisions illustrate the principle that a customer only has the right to a reasonable way of knowing how much product she is buying. Jackson's knowledge, as

embodied in her complaint, shows that she knows how to determine how much cereal a box of Annie's Frosted Oat Flakes contains. The fact that other customers might benefit from an injunction and therefore might have standing does not mean Jackson does. *See Gratz v. Bollinger*, 539 U.S. 244, 289 ("To have standing, it is elementary that the petitioners' own interests must be implicated.")

Jackson has not met her burden of establishing standing to seek injunctive relief.

**Other Issues**

Jackson's claims are derivative of her slack-fill claim. Because it is not adequately pled, the other claims fail as well.

Because Jackson's claims sound in fraud, she is obligated to plead supporting facts with greater particularity. As discussed above, the allegations do not satisfy the ordinary Rule 8 standard. *A fortiori* they do not satisfy the Rule 9(b) standard.

Because Jackson has not adequately pled any violation of a statute, her claim under the "unlawful" prong of the UCL is inadequately pled.

**Conclusion and Order**

Granting Jackson leave to file her proposed second amended complaint would be futile. For reasons discussed above, the complaint would be subject to dismissal on General Mills' motion as soon as it was filed. Jackson's motion for leave to file a second amended complaint (Docket no. 27) is **DENIED**.

Jackson has amended her complaint once, and her proposed second amended complaint would be dismissed as well. The Court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) The defects identified in this order have already been pointed out to Jackson, and there is no reason to believe she could successfully amend them even if given more opportunities.

/ / /

This action is therefore **DISMISSED WITHOUT LEAVE TO AMEND**. Jackson's claims are **DISMISSED WITH PREJUDICE** and the putative class claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

Dated: August 28, 2020

_____
Hon. Larry Alan Burns
Chief United States District Judge